UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM J. BRYAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-3928** |
| **WOOD ENTERPRISES, ET AL.** | **SECTION: "C" (5)** |

**ORDER AND REASONS**

Before this Court is a Motion for Summary Judgment filed by Defendant, Tom Wood Enterprises, LLC ("Wood Enterprises"). (Rec. Doc. 81). Plaintiff, William J. Bryan opposes the motion. (Rec. Doc. 95). The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Motion for Summary Judgment is GRANTED for the reasons set forth below**.**

**I. BACKGROUND**

Defendant, Wood Enterprises, operates several bars and restaurants in New Orleans, including Café Lafitte in Exile, which is a bar located on Bourbon Street in the French Quarter. (Rec. Doc. 81-7 at 1). Defendant Tom Wood owns both Café Lafitte in Exile and Wood Enterprises, as well as other properties managed by Wood Enterprises. *Id.* Plaintiff, William J. Bryan, has worked off and on for the Defendants since the early 1980's. *Id.* Plaintiff worked primarily as a bartender at Café Lafitte in Exile until August, 2005, when he was displaced by housing issues related to Hurricane Katrina. *Id.* at 2. In May, 2006, Plaintiff contacted Wood Enterprises' General Manger, Ken Grandpre, about returning to his previous position as bartender. *Id.* Grandpre indicated that while he did not need an additional bartender, he did need a new manager and offered such a

1

position to Bryan. *Id.* Plaintiff accepted the offer and was rehired as a manager of Café Lafitte in Exile in May, 2006, at the age of 49. *Id.* at 3. Wood is three years older than Plaintiff and Grandpre is one year younger than the Plaintiff. *Id.* at 9.

As manager of Café Lafitte in Exile, Plaintiff routinely scheduled himself for bartending shifts on the weekend, which are the shifts that normally produce the highest volume of business and therefore tips. (Rec. Doc. 81-7 at 4). While Wood Enterprises permits managers to schedule themselves as bartenders, it does not permit managers to perform back-office work, such as bank reconciliations and vault audits, during their bartending shifts. *Id.* Plaintiff learned of this policy sometime in October, 2006. *Id.* Furthermore, pursuant to the New Orleans Municipal Code, Wood Enterprises requires a manager with a permit to sell alcohol to be on the premises at all times. *Id.* Plaintiff was aware of these requirements. *Id.* at 5.

On January 5, 2007, which was a Friday, Plaintiff scheduled himself for the 5:00 p.m. until 1:00 a.m. bartending shift and scheduled two other bartenders for the 9:00 p.m. until 5:00 a.m. shift. (Rec. Doc. 81-7 at 5). One of the two bartenders scheduled for the later shift did not appear for work as scheduled. *Id.* The scheduled bartender who did show up for work was an unlicensed trainee. *Id.* Plaintiff did not find a replacement for the absent bartender, leaving the unlicensed trainee as the only other scheduled bartender that night. *Id.* at 5-6. Even though Plaintiff was scheduled to serve as a bartender from 5:00 p.m. until 1:00 a.m., he was in the back-office performing various management duties from approximately 9:00 p.m. until 1:00 a.m. *Id.* at 6. This left the unlicensed trainee alone behind the bar for that period. *Id.* At 2:00 a.m. Plaintiff left for the night leaving the bar without a licensed employee on the premises. *Id.*

While Plaintiff does not dispute any of the above facts, (Rec. Doc. 95-1 at 1-5), he does

2

assert that he did not spend an inordinate amount of time in the back office considering the work he was required to accomplish. *Id.* at 4. Moreover, Plaintiff asserts that he tried to find a replacement bartender but was unable to reach any member of upper management that night. *Id.* Finally, Plaintiff argues that leaving an unlicensed trainee alone in the bar was not unusual and that he was feeling ill that night, which required him to return home. *Id.* at 4-5.

On January 6, 2007, Defendant Tom Wood reviewed the previous night's sales receipts for Café Lafitte in Exile and his two other bars in the French Quarter. (Rec. Doc. 81-7 at 7). After noticing that Café Lafitte in Exile's receipts were lower than the other two bars - which was unusual because Café Lafitte in Exile was almost always Wood's highest earning bar - Wood decided to review the security camera videos from the previous night. *Id.* At that point Wood noticed that Plaintiff had violated company rules by working in the back-office while scheduled for bartending duty and by leaving the bar alone with a trainee from 2:00 a.m. until 5:00 a.m. *Id.* On the same day Wood had Plaintiff suspended and issued a letter detailing the reasons for the suspension. *Id.* at 8. The next day Grandpre returned to town and was informed of Plaintiff's actions on Friday night. *Id.* After discussing the matter with Wood, Grandpre informed Plaintiff that his employment was terminated, effective January 15, 2007. *Id.* at 9.

Plaintiff alleges that Defendants terminated his employment because of his age rather than his actions on January 5, 2007. (Rec. Doc. 36 at 4). For example, Plaintiff presents evidence that Grandpre informed Plaintiff that he should not schedule himself as a bartender "on weekends because Mr. Wood want[ed] a younger look behind the bar." (Rec. Doc. 96-4 at 73). Prior to Plaintiff's rehiring, Grandpre had also commented that Bryan was "looking kinda old", *id.* at 72, and referred to him as "grandpa" and "old man," (Rec. Doc. 95-9 at 2). Plaintiff was also instructed by

3

Grandpre to fire one individual because he was "too old." (Rec. Doc. 96-4 at 83). Plaintiff asserts that these statements by Grandpre establish direct evidence of Defendants' animus towards older employees and that the stated reasons for his termination were mere pretext to conceal the Defendants' discriminatory motive. (Rec. Doc. 36 at 4).

On August 2, 2007, Bryan filed an age discrimination claim with the Equal Employment Opportunity Commission and brought this lawsuit on July 14, 2008. (Rec. Doc. 81-7 at 9). Plaintiff asserts claims under both the Age Discrimination in Employment Act, ("ADEA") 29 U.S.C. §§ 621-634 *et seq*. and the Louisiana Age Discrimination in Employment Act, ("LADEA") La.R.S.23:311 *et seq*. (Rec. Doc. 36 at 5). The Louisiana courts have used federal case law interpreting the ADEA as a guide to interpreting the LADEA. *Taylor v. Oakbourne Country Club,* 846 So.2d 959, 963 (La.App. 3 Cir. 2003).

## II. STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### III. ANALYSIS

The Age Discrimination in Employment Act, ("ADEA") 29 U.S.C. §§ 621-634 provides that "[i]t shall be unlawful for an employer...to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has recently held that to establish discrimination under the ADEA a plaintiff must prove that age was the "but for" cause of her employer's adverse employment decision. *Gross v. FBL Fin. Serv., Inc.*, 129 S.Ct. 2343, 2351 (2009). The *Gross* case further held that a "mixed-motive" jury instruction was never appropriate in an age discrimination case under the ADEA. *Id.* at 2350. A "mixed-motive" jury instruction permits a jury to find for the plaintiff if they believe that discriminatory bias was one factor among other, legitimate, factors that motivated the adverse employment decision. *Machinchick v. PB Power,* Inc., 398 F.3d 345, 351 (5thCir. 2005). As a

result, a plaintiff can recover under the ADEA only if her employer has no legitimate reason for the challenged employment decision or if the plaintiff can show that the employer's given reason is a mere pretext. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Even though *Gross* failed to clarify whether the *McDonnell Douglas* burden shifting framework applies to ADEA claims, the Fifth Circuit has continued to apply it to ADEA claims. *Id.* Under the *McDonnell Douglas* framework a plaintiff must first establish a *prima facie* case of discrimination. *Machinchick*, 398 F.3d 345 at 352. If a *prima facie* case can be demonstrated then the employer is required to produce a legitimate, non-discriminatory, explanation for the challenged employment decision. *Id.* If such an explanation is provided, then the Plaintiff must prove that the offered reasons are a mere pretext. *Id.*

Historically, if a plaintiff could provide direct evidence[1] of discrimination, the *McDonnell Douglas* framework was inapplicable and the plaintiff was entitled to a "mixed-motive" jury instruction as developed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). But after *Gross*, mixed-motive jury instructions are no longer available in ADEA claims. *Gross*, 129 S.Ct. 2343 at 2350. In *Gross* the Supreme Court held that "[a] plaintiff must prove by a preponderance of the evidence (*which may be direct or circumstantial*), that age was the "but-for" cause of the challenged employer decision." *Id.* at 2351 (emphasis added). The Supreme Court further held that whether a plaintiff produces direct or circumstantial evidence does not change a plaintiff's ultimate burden of proof. *Id.* at FN. 4. Nevertheless, Plaintiff argues that because he has provided direct evidence of discrimination, the *McDonnell Douglas* framework does not apply to this case. (Rec. Doc. 95 at 13). However, if the

---

[1] Direct evidence is evidence that does not require any inferences in order to establish discrimination. *Standstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5thCir. 2002).

6

*McDonnell Douglas* framework does not apply to Plaintiff's claims, it is not clear what test would apply.

However, it is unnecessary for the Court to address the question of what standard to apply, as the Plaintiff has not presented any direct evidence of discrimination. The Plaintiff argues that Grandpre's comments about him looking old suggests that Grandpre believed that Bryan should not be a bartender because of his age. (Rec. Doc. 95 at 15). However, for something to be direct evidence of discrimination it must not require any inference in order to establish discrimination. *Standstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Evidence that "suggests" discrimination requires such an inference and is therefore not direct evidence. As a result, the *McDonnell Douglas* framework does apply to the Plaintiff's claim.

      A.      PLAINTIFF'S *PRIMA FACIE* CASE OF AGE DISCRIMINATION

Under the *McDonnell Douglas* framework a plaintiff is first required to provide sufficient evidence to establish a *prima facie* case of age discrimination. *Machinchick*, 398 F.3d 345 at 352. To establish a *prima facie* case of age discrimination, "a plaintiff must show (1) that he was discharged; (2) that he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson*, 602 F.3d 374 at 378 (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

The parties do not dispute the first three factors. (Rec. Doc. 95 at 17). Nor does the Plaintiff provide any evidence that he was replaced by someone younger. *Id.* Rather the Plaintiff argues that he was "otherwise discharged because of his age." *Id.* at 17-20. In support of this claim Plaintiff

7

produces numerous remarks by Grandpre regarding either Plaintiff's age or the age of other Wood Enterprises' employees.

For instance, after his rehire in May, 2006, Grandpre informed Plaintiff that he should not schedule himself as a bartender "on weekends because Mr. Wood wanted a younger look behind the bar." (Rec. Doc. 96-4 at 73). Prior to Plaintiff's rehiring, Grandpre had commented that Bryan was "looking kinda old", *id.* at 72, and referred to him as "grandpa" and "old man," (Rec. Doc. 95-9 at 2). Plaintiff was also instructed by Grandpre to fire one individual because he was "too old." (Rec. Doc. 96-4 at 83). For the purposes of summary judgment these allegations are taken as true. *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986). Several of these comments are almost identical to comments that the Fifth Circuit has found sufficient to establish a *prima facie* case of employment discrimination. *Machinchick*, 398 F.3d 345 at 3523 (finding the description of an employee as "not adaptable" sufficient to support inference of age discrimination); *Rachid*, 376 F.3d 305 at 313 (finding the phrase "he's probably in bed by now...because of his age" establishes a *prima facie* case of age discrimination); *Russell v McKinney Hosp. Venture,* 235 F.3d 219, 226 (5th Cir. 2000) (holding that a presumption of age discrimination was warranted when a co-worker with excessive influence over a supervisor referred to a co-worker as "old bitch"); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 656 (5th Cir. 1996) (calling an employee an "old goat" and taunting him for "not being able to get it up" established a *prima facie* case). As a result, this Court finds that the Plaintiff has established a *prima facie* case of age discrimination.

B.     DEFENDANTS' LEGITIMATE REASONS FOR TERMINATING PLAINTIFF

Once a plaintiff has shown a prima facie case of age discrimination, the burden of production - but not persuasion - shifts to the defendant, requiring the defendant to produce some legitimate reason for the challenged employment decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). At the time of Plaintiff's initial suspension Defendants indicated that Plaintiff was subject to discipline for working in the back-room while he was scheduled as a bartender as well as for leaving the bar in the sole care of an inexperienced bartender on a Friday night. (Rec. Doc. 81-7 at 7). Defendants have since supplemented their explanation by pointing out that Plaintiff left the bar with an unlicensed bartender in violation of company policy and New Orleans Code. (Rec. Doc. 81-6 at 6). As these are non-discriminatory reasons for Plaintiff's termination, the Court finds that the Defendants have met their burden of production and that the Plaintiff is required to show that the offered reasons are a mere pretext.

### C.  PLAINTIFF'S ARGUMENT THAT THE OFFERED REASONS FOR HIS TERMINATION ARE MERE PRETEXT

A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d 374 at 378 (internal quotation and citation omitted). The Fifth Circuit case law related to whether "the employer's proffered explanation is false or unworthy of credence" all involve factual disputes over whether the reasons cited for termination actually occurred. *Machinchick*, 398 F.3d 345 at 354 (employee fired for poor performance could show that he had just closed a major sale before his termination); *Rachid*, 376 F.3d 305 at 314 (employee disputed whether he violated an unclear employment policy); *Rubinstein v. Admin. of the Tulane Education Fund*, 218 F.3d 392, 400 (5th Cir. 2000) (employee denied promotion because he was a poor university citizen disputed the

9

allegation on the grounds that he was excluded from university committees). Unlike *Rachid*, Plaintiff acknowledges that he was aware of all of the policies and municipal ordinances that he violated on January 5, 2007. (Rec. Doc. 81-7 at 4-5). Nor does Plaintiff dispute that he committed the infractions cited in his suspension letter. *Id.* As a result, Plaintiff cannot establish pretext on the basis that Defendants' explanation for his termination is false or unworthy of credence, because Plaintiff admits that they are true.

Therefore the only legal basis for establishing pretext is for Plaintiff to demonstrate disparate treatment between his termination and the treatment of other similarly situated individuals. *Jackson*, 602 F.3d 374 at 378. To this end, Plaintiff argues that leaving the bar in the hands of an unlicensed trainee was common practice at Wood Enterprises, that his punishment was inconsistent with previous punishments for the same violation and a violation of the company's discipline policy. (Rec. Doc. 95 at 22).

While the Plaintiff argues that leaving the bar in the sole car of an unlicensed trainees is common practice at Wood Enterprises he was unable to indicate any particular incidence of this occurring. (Rec. Doc. 96-5 at 139, 144). Without another incidence of a manager leaving the bar in the sole care of an unlicensed trainee it is impossible to establish disparate treatment on that basis.

Plaintiff further argues that Defendants' explanation for his termination is a pretext because Wood Enterprises administers its discipline policy inconsistently. (Rec. Doc. 95 at 22). But Plaintiff fails to provide any evidence of such inconsistency in his Memorandum in Opposition to Defendants' Second Motion for Summary Judgment. (Rec. Doc. 95). The only other incident that could be compared to Plaintiff's termination is the fact that a few weeks before Plaintiff's employment was terminated, a manager at a separate Wood Enterprises' bar was suspended for three

days for working in the backroom while scheduled for a bartending shift. (Rec. Doc. 81-6 at 22). While the reasons for Plaintiff's employment termination include this infraction, it additionally includes the fact that he left the bar in the sole care of an unlicensed trainee. Therefore, Plaintiff is not similarly situated to the other manger and cannot demonstrate disparate treatment on the basis of their different punishments.

Plaintiff finally argues that Wood Enterprises did not follow its own procedures in terminating him for his violations of company policy on January 5, 2007. (Rec. Doc. 95 at 22). Plaintiff points out that Wood Enterprises has a list of "house rules" that warrant automatic termination and that neither of his policy infractions are on that list. *Id.* at 7-8.

This argument is unconvincing because it assumes that Defendants only had authority to automatically fire Plaintiff for violations of "house rules." Plaintiff misunderstands the nature of the "house rules", since these rules are not necessary requirements for automatic termination, but rather sufficient justifications for automatic termination. (Rec. Doc. 95-6 at 6). There are many actions that an employee could take that are not listed in the "house rules," such as arson, which are legally sufficient to justify automatic termination. *Id.* The fact that an employee might be terminated for such an action does not mean they have been subject to disparate treatment because the company discipline manual did not exhaustively list such behavior in the "house rules." In this case the Defendants' discipline policy was silent as to the appropriate punishment for leaving the bar in the hands of an unlicensed trainee as well as the punishment for multiple policy infractions on the same night. *Id.* This silence gave the Defendants the freedom to determine an appropriate punishment in the circumstances. *McPherson v. Cingular Wireless, LLC.*, 967 So.2d 573, (La.App. 3 Cir. 2007) ("there exists no Louisiana jurisprudence in which an employee manual has been held to confer any

contractual rights upon an employee or to create any exceptions to the employment-at-will doctrine"). While Plaintiff might believe that he was punished too harshly, the harshness of his punishment is only legally relevant if Plaintiff has been treated differently than other employees who committed similar infractions. Because Plaintiff has not shown such evidence, he has not established pretext.

Ultimately, Plaintiff is required to prove that "but for" his age he would not have been terminated for his actions on January 5, 2007. *Gross*, 129 S.Ct. 2343 at 2351. Considering the Plaintiff's inability to demonstrate that Defendants' reasons for his termination were false or that they treated him differently from similarly situated employees, Plaintiff cannot establish pretext as required by *McDonnell Douglas. Jackson*, 602 F.3d 374 at 378. While the Plaintiff does offer evidence of remarks that indicate age discrimination by his employers, such stray comments are insufficient to establish discrimination by themselves. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("an employer [is] entitled to a judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision"); *Jackson*, 602 f.3d 374 at 380 (holding remarks that are not made either proximate in time or directly related to the challenged employment decision to be "stray remarks," which standing alone cannot defeat summary judgment). At most the evidence Plaintiff offers regarding Wood Enterprises' desire for a younger "look" suggests that age discrimination might have been a factor in the decision to terminate the Plaintiff. But after *Gross* such an evidentiary showing is legally insufficient to prove a violation of the ADEA, since the Defendants had a legitimate reason to terminate the Plaintiff, which was not mere pretext. *Gross*, 129 S.Ct. 2343 at 2352.

This conclusion is further supported by the fact that Plaintiff was hired at the age of 49 by

Grandpre and Wood, and then fired by the same people only eight months later. (Rec. Doc. 81-7 at 3, 9). Under the "same actor" doctrine, an employer who both hires and fires an employee is entitled to a rebuttable presumption that they did not act out of discriminatory animus. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). This presumption is particularly appropriate in this case as some of Grandpre's comments about Plaintiff's old age occurred before he was rehired in May, 2006. (Rec. Doc. 95 at 2). If these comments were truly evidence of his discriminatory animus against Plaintiff it is confusing why he would rehire the Plaintiff at the age of 49 after he had stated that Plaintiff "looked old."

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Wood Enterprises' Motion for Summary Judgement is GRANTED.

New Orleans, Louisiana, this 27th day of September, 2010.

HELEN G. BERRIGAN
UNITED STATED DISTRICT JUDGE